## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**CLARENCE ALLEN TORRES**,

      **Movant,**

v.                           **Case No. 3:12-cv-01167**
                                      **(Criminal Case No: 3:09-cr-00110-01)**

**UNITED STATES OF AMERICA,**

      **Respondent.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 and Motion to Amend § 2255 Petition (ECF Nos. 102, 112) and Respondent's Motion to Dismiss. (ECF No. 108). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that Movant's Motion to Amend be granted; Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, as amended, be denied; Respondent's Motion to Dismiss be granted; and this matter be dismissed, with prejudice, and removed from the docket of the Court. Given that the undersigned conclusively **FINDS** that Movant is not entitled to the relief requested, an evidentiary hearing is not warranted. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

## I.      <u>Background</u>

On November 16, 2008, a vehicle driven by Movant, Clarence Allen Torres ("Torres"), was stopped for speeding by an officer with the Huntington, West Virginia Police Department. A subsequent search of the vehicle resulted in the seizure of 19.6 grams of cocaine base (also referred to as "crack"). Torres was arrested and was later released on bond. The following day, while at a gas station in Huntington, Torres was approached by the same police officer who again searched Torres's vehicle. During this search, the officer located and confiscated $38,734 in United States currency. Torres advised the officer that he had been paid to transport the money from Huntington to Detroit, Michigan.

On April 29, 2009, Torres was named in a two-count indictment returned by a federal grand jury in Huntington. Count One of the indictment alleged that Torres and others knowingly conspired to distribute 50 grams or more of cocaine base within the Huntington area. Count Two alleged that on November 16, 2008, Torres possessed with intent to distribute five grams or more of cocaine base. The indictment also contained a forfeiture provision pertaining to the $38,734 retrieved from Torres during the second search on November 17, 2008.

An arraignment on the indictment was held on May 27, 2009. Torres qualified for court-appointed counsel and was represented by Barron Helgoe, a CJA panel attorney. Torres entered a not guilty plea and was released on bond. Thereafter, Mr. Helgoe filed a motion to suppress all evidence obtained during the two vehicle searches, arguing that Torres was detained illegally and the searches were conducted without probable cause. The presiding District Judge denied the motions, finding that the November 16 search was justified by the officer's reasonable suspicion of illegal activity and the November 17

search was irrelevant because the Government agreed not to use the currency obtained during that search without prior court approval.

On March 26, 2010, Torres agreed to plead guilty to Count Two of the indictment pursuant to a written plea agreement. (ECF No. 62). The plea agreement included a stipulation of facts in which Torres admitted that on November 16, 2008 he possessed 19.6 grams of cocaine base with the intent to distribute 5 or more grams and that he had reason to believe that the $38,734 found in his vehicle on November 17 constituted proceeds of unlawful activity. The plea agreement also contained an acknowledgement by Torres that the District Court was not bound by the stipulation of facts and would impose a sentence within its sole discretion. In regard to sentencing, the Government reserved its rights, *inter alia*, to inform the Court of all relevant facts and conduct, present evidence, and respond to statements or arguments made by or on behalf of Torres. Torres also waived the right to challenge his guilty plea and any sentence imposed within the applicable guidelines range and to limit collateral attacks on his conviction or sentence to claims based on ineffective assistance of counsel. A plea hearing was held on March 30, 2010. After conducting a thorough Rule 11 colloquy, the District Court determined that Torres understood the terms of the plea agreement and the consequences of entering a guilty plea. Finding Torres to be competent and his guilty plea to be voluntary and intelligent, the Court accepted the plea.

On July 12, 2010, the District Court conducted Torres's sentencing hearing. (ECF No. 108-2). The Government argued that under the relevant conduct provisions of the United States Sentencing Commission Guidelines Manual ("sentencing guidelines"), § 1B1.3, Torres should be held accountable for 1.5 to 4.5 kilograms of crack in determining his base offense level. Torres argued that he should only be held responsible for the 5

grams of crack he intended to distribute. After hearing the testimony of six witnesses and considering the arguments of counsel, the District Court concluded that Torres was responsible for at least 1 kilogram of crack and determined his base offense level to be 34. After applying the reductions for acceptance of responsibility, the District Court calculated Torres's offense level to be 31. With a Criminal History Category of II, an appropriate term of imprisonment under the sentencing guidelines ranged from 121 to 151 months. The Court imposed a sentence of imprisonment of 121 months. (ECF No. 82).

Torres appealed his sentence to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"), arguing that he should be resentenced under the Fair Sentencing Act of 2010, which had been enacted approximately three weeks after his sentencing hearing, and that his offense level was incorrectly calculated because his relevant conduct was based upon the unreliable testimony of his alleged co-conspirators. (*See* ECF No. 95). The Fourth Circuit affirmed the sentence, holding that (1) the Fair Sentencing Act was not retroactive and (2) the District Court did not clearly err in determining the relevant conduct. The Fourth Circuit emphasized that the District Court did not rely entirely upon witness testimony in finding that Torres was responsible for 1 kilogram of crack; rather, the Court also considered the currency seized from Torres and his co-conspirator, Donta Brooks. Performing a conversion of the cash into its drug equivalent, the Fourth Circuit concluded that the District Court's estimate of 1 kilogram was supported by that calculation alone.

## II.  Movant's Grounds for Vacating, Setting Aside, or Correcting His Sentence.

Torres states the following grounds in support of his § 2255 Motion, as amended:

1.   Lack of a voluntary and intelligent guilty plea due to ineffective assistance of counsel. According to Torres, his decision to plead guilty was based upon his counsel's misrepresentation that the Government had orally agreed not to use the $38,734 seized from Torres against him at sentencing.  (ECF Nos. 103 at 5, 114 at 1).

2.   Ineffective assistance of counsel at sentencing and on appeal. Torres argues that his trial counsel should have objected when the Government breached its oral agreement and asked the Court to convert the currency found on Torres into its drug equivalent. (ECF Nos. 103 at 10-13, 114 at 2-3). In addition, Torres complains that his appellate counsel should have challenged the District Court's conversion of the cash into its drug equivalent when there was no factual basis upon which to make the conversion.

3.   Ineffective assistance of counsel at sentencing. Torres contends that counsel should have requested a continuance of the sentencing hearing until implementation of the Fair Sentencing Act of 2010. Torres stresses that the Act was passed by the Senate before his sentencing hearing; therefore, counsel should have been aware of the prospective changes in the Act that eliminated or reduced mandatory sentences associated with cocaine base convictions. The Act was signed into law two and half weeks after Torres's sentence was imposed, but was not retroactive. In Torres's view, if the sentencing hearing had been delayed, he would not have been subject to a mandatory minimum sentence; "thus, there is a reasonable probability that Movant Torres would actually have received a lesser sentence absent [counsel's] failure to request a continuance and for failing to anticipate a development in the law..." (ECF No. 114 at 3-5).

4.   The conviction was obtained using evidence obtained through an unconstitutional search and seizure. (ECF No. 102 at 4).

5.   The conviction was obtained using evidence obtained pursuant to an unlawful arrest. (ECF No. 102 at 5).

## III.   28 U.S.C. §2255 and Ineffective Assistance of Counsel

A motion made under 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence imposed in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked

jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. When a criminal defendant enters a voluntary and intelligent guilty plea, he or she admits the material elements of the charged crime. *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). This admission of guilt represents "a break in the chain of events which preceded it in the criminal process" and acts as a waiver of all claims relating to non-jurisdictional errors that occurred prior to the plea, including claims relating to alleged constitutional deprivations. *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *See also United States v. McCleary,* 112 F.3d 511 (4th Cir. 1997) (unpublished). As a result, a § 2255 motion filed after a guilty plea is, for the most part, restricted to an attack on the voluntary and intelligent nature of the plea.

As previously stated, Torres alleges, in part, that his trial attorney provided ineffective assistance during plea negotiations, causing him to enter a guilty plea that was neither knowing nor voluntary. He also claims that counsel was ineffective at sentencing resulting in a term of imprisonment that was significantly longer than it would have been if counsel had acted effectively. Finally, Torres argues that his appellate counsel was ineffective by failing to challenge the District Court's incorrect calculation of the applicable base offense level, allowing the unfairly enhanced sentence to stand. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel during critical stages of criminal proceedings, *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), including plea-bargaining and sentencing, *Lafler v. Cooper*, ___U.S.___, 132 S. Ct. 1376, 1384-86, 182 L.Ed.2d 398 (2012), and direct appeal. *Smith v. Murray*, 477 U.S. 527, 535-36, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). While assistance "which is

ineffective in preserving fairness does not meet the constitutional mandate," *Strickland,* 466 U.S. at 685-86, "defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor,* 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2001).

Under *Strickland*, a defendant can prove ineffective assistance of counsel by meeting the requirements of a two-prong test. The defendant carries the burden of satisfying both prongs of the test, and "a failure of proof on either prong ends the matter." *United States v. Roane,* 378 F.3d 382, 406 (4th Cir. 1994). First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. When evaluating counsel's performance under the first prong of *Strickland,* "judicial scrutiny of counsel's performance must be highly deferential and ... court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. (internal quotation marks omitted). "The question [under *Strickland*] is whether counsel made errors so fundamental that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." *Harrington v. Richter,* ___U.S.___, 131 S.Ct. 770, 778, 178 L.Ed.2d 624 (2011).

The second prong of the *Strickland* test requires the defendant to affirmatively establish prejudice; that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 687-91. In the context of a guilty plea, the prejudice prong of *Strickland* requires the defendant to demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. In the context of sentencing, the defendant must show that a

reasonable probability exists that his sentence would have been more lenient absent counsel's errors. *See Buckner v. Polk*, 453 F.3d 195, 201–08 (4th Cir. 2006); *Royal v. Taylor,* 188 F.3d 239, 248–49 (4th Cir. 1999); *See also Lafler v. Cooper*, ___U.S.___, 132 S.Ct. 1376, 1385–86, 182 L.Ed.2d 398 (2012) (quoting *Glover v. United States,* 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001)) (internal citations omitted). Lastly, in the context of an appeal, the defendant must demonstrate a reasonable probability that, but for his counsel's failure to raise a particular issue, he would have prevailed on the appeal. *Smith v. Robbins*, 528 U.S. 259, 285-86, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

Under the Rules Governing Section 2255 Proceedings, the reviewing court must examine the motion, answer, any transcripts and record of prior proceedings, and any other materials supplied by the parties to determine the need for an evidentiary hearing. If the motion can be resolved based on the record before the court, an evidentiary hearing is unnecessary. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970). With this framework in mind, the undersigned examines each of Torres's allegations.

## IV.   <u>Analysis</u>

### A.   **Claims Related to the Oral Agreement with the Government**

Torres's first two grounds are premised on an alleged oral promise made by the Government in conjunction with the plea agreement. Torres claims that he was told by his lawyer that if he entered a guilty plea to Count Two of the indictment and stipulated that the $38,734 found in his possession was derived from illegal activity, the Government would not to use the currency against him at sentencing. Torres concedes that this alleged promise was not incorporated into the written plea agreement and further acknowledges that neither he nor his lawyer raised its absence from the written agreement at the plea hearing. To the contrary, at the plea hearing, Torres testified that

no promises other than those expressly contained in the written agreement were made as inducement to his guilty plea. Nevertheless, Torres argues that his guilty plea was not voluntary or intelligent because it was based upon his erroneous belief that he "was only pleading guilty and stipulating to 19.6 grams of crack cocaine, 5 grams or more of which he intended to distribute" and he "would not otherwise have pleaded guilty." (ECF No. 103 at 5-9). Relying on the Fourth Circuit's opinion in *United States v. White,* 366 F.3d 291 (4th Cir. 2004), Torres asserts that he is entitled to an evidentiary hearing on the issue of whether the Government made such a promise as part of the inducement or consideration for the plea agreement. He also contends that if he proves by a preponderance of the evidence that the oral agreement existed, he is entitled to the benefit of his bargain; that being, a reduction of his sentence. In the alternative, Torres seeks to withdraw his guilty plea as a remedy for the Government's breach. In response, the Government argues that Torres's assertions are "wholly unsupported by the record" given that the District Court did not convert the currency into a drug equivalent. (ECF No. 108 at 5). According to the Government, the District Court considered and referenced the currency only in terms of it evidentiary value as corroboration of Torres's role as a key supplier in the drug trafficking conspiracy.

In *United States v. White,* the Fourth Circuit examined a claim by White, a habeas petitioner, that his guilty plea was not voluntary or intelligent. According to White, he entered the guilty plea based largely upon the Government's promise that he could retain his right to appeal the denial of a suppression motion. Although the conditional nature of the plea was never incorporated into the written plea agreement, White's counsel assured him that he preserved the right to file the appeal. However, when White filed the appeal, the Fourth Circuit dismissed it on the basis that the plea

agreement did not contain the written reservation of rights described in Fed. R. Crim. P. 11(a)(2) that would have made the plea conditional. White next filed a § 2255 motion seeking to have his conviction vacated or his plea reformed to reflect the agreed-upon condition. A United States Magistrate Judge ordered discovery, which proved that White's counsel had incorrectly advised him that he "could appeal the denial of his suppression motion notwithstanding the failure of the written plea agreement to contain any provision permitting this;" that White relied upon that representation in entering his guilty plea; and that he would not otherwise have pled guilty. *White*, 366 F.3d at 295. The Government ultimately conceded, and the District Court found, that by giving this erroneous advice, White's counsel had provided ineffective assistance, rendering the guilty plea involuntary.

White then moved the Court to reform the written agreement to reflect the conditional plea. The Government, on the other hand, argued that it had never agreed to a conditional plea and urged the District Court to vacate White's conviction and sentence and return him for trial. Without conducting an evidentiary hearing on the issue of whether an oral agreement existed, the District Judge found "that neither party had produced 'hard, objective evidence' supporting their respective assertions." *Id.* at 295. Relying upon White's affirmation of the unconditional written agreement during the plea hearing, the Court found that White had failed to prove the existence of an oral agreement by a preponderance of the evidence. The District Judge vacated White's conviction and sentence and set the case for trial.

On appeal to the Fourth Circuit, the parties agreed that White's plea was involuntary due to ineffective assistance of counsel and that he had been prejudiced by the deficient representation. They also agreed that the only issue before the appellate

court was the narrow question of whether the district court erred by refusing to reform White's plea to include the terms of the alleged agreement. The Fourth Circuit began its review by identifying the governing principles, acknowledging "that when a plea rests in any significant degree on a promise ... of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 295 (citing *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)). Consequently, if the Government had orally agreed to a conditional plea, White was entitled to the relief he requested. At the same time, the Fourth Circuit recognized that a defendant's sworn declarations affirming a plea agreement "carry a strong presumption of verity" and present "a formidable barrier in any subsequent collateral proceedings." *Id.* at 295-96 (citing *Blackledge*, 431 U.S. at 71). "To adopt a more lenient approach and 'allow indiscriminate hearings in federal post-conviction proceedings ... would eliminate the chief virtues of the plea system-speed, economy, and finality.'" *Id.* However, the Court added, "not even Rule 11's procedural safeguards immunize a guilty plea from collateral attack or render an evidentiary hearing on a petitioner's contentions unnecessary." *Id.* at 295. The Court reiterated that when evaluating a petitioner's § 2255 motion, the district court must first determine whether the allegations, "when viewed against the record of the [Rule 11] plea hearing, [are] so palpably incredible, so patently frivolous or false as to warrant summary dismissal." *White,* 366 F.3d at 296-97. If they are not, the district court should assess whether facts material to non-frivolous allegations are in dispute. An evidentiary hearing is only necessary when the parties have produced evidence establishing that material facts bearing on non-frivolous allegations are genuinely in dispute. *Id.* If disputed facts are not material, or material

facts are not disputed, the Court can resolve even non-frivolous habeas allegations without conducting an evidentiary hearing.

The Fourth Circuit examined the record of White's plea hearing and the written plea agreement. Although the record undeniably reflected a thorough and proper Rule 11 colloquy, neither party disputed that White only entered the guilty plea because he relied upon the advice of his counsel that his plea was conditional. In addition, neither the plea agreement nor the Rule 11 colloquy effectively contradicted the incorrect advice given by White's counsel. In light of the record, the Fourth Circuit was unable to conclude that White's allegations of an agreement with the Government were palpably incredible or patently frivolous or false. Finding the particular circumstances of White's case to be extraordinary and rare, the Fourth Circuit remanded the case to the district court for an evidentiary hearing on the existence of an agreement.[1]

Torres asserts that the circumstances of his case mirror those of White and, consequently, entitle him to an evidentiary hearing on the existence of an agreement with the Government that the currency would not be used against him at sentencing. Like White, Torres claims that his guilty plea was based on the alleged agreement; he was reassured by his counsel that the agreement was in place even though it was not contained in the written document; and he would not have pled guilty without the benefit of the agreement. Torres's reliance on *White,* however, is misplaced inasmuch as Torres has not cleared the preliminary factual hurdles that formed the basis of the *White*

---

[1] The circumstances considered extraordinary and rare by the Fourth Circuit included, "White's sworn allegations (and the lack of any sworn denial from the Government) against the record of a plea hearing involving: an involuntary plea, a defendant relying on mistaken advice from constitutionally ineffective counsel, a plea agreement that does not contradict the defendant's understanding, and a Rule 11 colloquy that also fails to negate the erroneous advice provided by constitutionally ineffective counsel." *White,* 366 F.3d at 300.

decision. In *White*, the District Court had already determined that White's counsel had provided inadequate services and White was prejudiced by his counsel's ineffectiveness. Accordingly, the only remaining issue was whether the relief awarded to White was appropriate. In contrast, in this case, the review must start with the question of whether Torres received ineffective assistance of counsel.

Torres alleges two factual scenarios that address the performance prong of *Strickland*. First, he contends that his counsel provided erroneous advice that an agreement existed with the Government notwithstanding its absence from the plea agreement and, based upon that advice, Torres pled guilty. Alternatively, Torres asserts that an agreement existed with the Government, which was breached, and his counsel was ineffective for failing to enforce the agreement.[2] Torres generally describes the terms of the agreement as follows: "The oral agreement was that Movant would forfeit the $38,734.00 to the government and the government would not use the money against Movant at sentencing." (ECF No. 103 at 9, fn 1). He subsequently explains that the phrase "not using the money against him at sentencing" meant "that the $38,734.00 would not be introduced [into evidence] or converted into drugs and used against him for sentencing purposes." (*Id.* at 10); (*See also* ECF No. 103 at 13, 14, 15).

Regardless of which scenario is assumed, Torres fails to establish a *prima facie* case of ineffective assistance of counsel because, as the Government points out, it did not breach the terms of the agreement as outlined by Torres. Thus, counsel's advice and

---

[2] It should be noted that under the second scenario, a breach by the Government would not retroactively render Torres guilty plea unknowing or involuntary and would not invalidate it. Instead, a breach by the Government would simply entitle Torres to seek an adequate remedy to redress the breach. *Davis v. United States*, 2009 WL 3853320 *7  (W.D.Va. Nov. 17, 2009) (citing *Puckett v. United States,* 556 U.S. 129, 137, 129 S.Ct. 1423, 172 L.Ed.2d 266 (2009)).

actions fell within the wide range of reasonable professional assistance.[3]

At the plea hearing, the Government presented one witness, Detective Curt Nethercutt. (ECF No. 108-3 at 22-25). Detective Nethercutt testified about the traffic stop on November 16, 2008, which resulted in a search of Torres's automobile and recovery of 19.6 grams of cocaine base. Notably, the Government did not question Detective Nethercutt about the search conducted the following day or the discovery of $38,734 in Torres's car. When the District Judge inquired into the factual basis for Torres's guilty plea and the currency forfeiture, Torres carefully explained that he did not know if the money constituted drug proceeds but had reason to believe it was derived from some form of illegal conduct. The Government did not challenge this equivocation.

After the plea hearing, the Government provided the Probation Officer with information relevant to the drug weight attributable to Torres. (*See* ECF Nos. 64, 65). The Probation Officer, noting that the plea agreement did not address relevant conduct, calculated the drug weight based upon the statements and grand jury testimony of Torres's alleged co-conspirators, Donta Brooks and Tracy Robbins. Although the Probation Officer opined that the currency found on Torres "likely constitute[d] drug proceeds," the Officer did not convert the currency into its drug equivalent and was not asked to do so by the Government. Instead, the Government took the "conservative" position that Torres was responsible for 1.5 to 4.5 kilograms of crack based on the testimony of his co-conspirators that Torres was observed in possession of 6 or more

---

[3] The Government neither explicitly confirms nor denies the existence of an oral agreement; instead, it argues that if Torres's counsel told Torres that "the seized currency would not be used to determine his base offense level, that advice was accurate," because "[t]he District Court did not rely on a conversion of currency into a drug equivalency." (ECF No. 108 at 5).

kilograms of the drug over a period of several years.

At the sentencing hearing, the Government offered three witnesses on the issue of relevant conduct, including Donta Brooks, Tracy Robbins, and Special Agent Tom Bevins of the Drug Enforcement Agency. (ECF No. 108-2). Special Agent Bevins was called to establish the existence of a drug trafficking conspiracy involving Torres, Brooks, and Robbins. (*Id.* at 5-17). He was not asked any questions regarding the currency found on Torres, but did testify regarding $13,000 and 44 grams of crack found during a search of Brooks's home. Donta Brooks was then called to testify regarding Torres's involvement in local drug trafficking, but was excused by the Government when it suspected Brooks of lying. (*Id.* at 17-24). Brooks was not asked any questions regarding the currency found on Torres. Finally, Tracy Robbins testified at length regarding her communications and observations of Torres in relation to crack distribution in the Huntington area. (*Id.* at 25-43). Robbins testified that Torres supplied dealers in Huntington with cocaine base transported from Detroit. She claimed to have witnessed Torres deliver to Stanley Smith (Robbins's former boyfriend and a convicted drug dealer) approximately 22-36 ounces of crack once or twice each week for the better part of two years. She also recalled seeing Torres with as much as 100 ounces of crack at one time, an amount in excess of two kilograms. (*Id.* at 35*). The Government did not question Ms. Robbins about the currency found in Torres's possession on November 17, 2008. At the conclusion of the evidence, the Court allowed counsel to argue their positions on the weight of the drug that should be attributed to Torres to determine his base offense level. At no time did the Government argue the drug equivalent of the currency or request that the Court convert the currency into its drug equivalent. (ECF No. 108-2 at 48-49). Torres's counsel properly argued that the

Government did not prove by a preponderance of the evidence that Torres was responsible for 1.5 to 4.5 kilograms of crack, because the witnesses were unreliable. Given that the Government did not raise the issue of conversion of currency, defense counsel had no basis to assert that the Government breached an alleged oral agreement.

"For most purposes, a plea agreement can be considered a contract between a criminal defendant and the government. The government's promises furnish the consideration which induces the defendant to enter into the agreement. If the government breaks one of its promises, the defendant is entitled to appropriate relief to remedy the breach." *Jefferson v. Berkebile,* 688 F.Supp.2d 474, 491 (S.D.W.Va. 2010) (citing *Puckett,* 556 U.S. at 137) (internal citations omitted). "A central tenet of contract law is that no party is obligated to provide more than is specified in the agreement." *United States v. Peglera,* 33 F.3d 412, 413 (4th Cir. 1994). Consequently, the Government is only bound "by the promises that were actually made in inducing a guilty plea." *United States v. Lewis,* 633 F.3d 262, 269 (4th Cir. 2011).

Here, Torres claims that the Government agreed not to use the currency to enhance his sentence. Despite the agreement, the District Court converted the currency into its drug equivalent for purposes of determining Torres's base offense level; thus, the Government breached the agreement. The Government counters by arguing that no one converted the currency into its drug equivalent; therefore, no purported agreement was breached. In reply, Torres raises the Fourth Circuit's opinion on his direct appeal and contends that the "law of the case" doctrine prevents the Government from taking the position that a conversion did not occur. Torres points out that the Fourth Circuit expressly found that the District Court had used both the crack and the currency possessed by Torres and Brooks to calculate the drug weight attributable to Torres.

Given the Fourth Circuit's finding that the currency was used against him, "the government either breached a [sic] 'oral promise' to Movant Torres OR Movant Torres's ex-lawyer Attorney Baron M. Helgoe misrepresented the terms of the plea agreement to Movant Torres which constitutes a cognizable claim of ineffective assistance of counsel in violation of his Sixth Amendment Rights." (*Id.* at 3).

Torres's argument is unpersuasive for the following reason. Regardless of whether or not the District Court converted the currency,[4] Torres cannot establish a claim of ineffective assistance of counsel based upon an alleged oral promise of the Government. Torres fails to acknowledge that the District Court was not a party to the alleged oral agreement and was not obligated to accept the parties' stipulations and recommendations regarding sentencing.[5] *Jefferson,* 688 F.Supp.2d at 491. The alleged agreement restricted only the actions of the Government, and the Government abided by the restrictions. Indeed, the Government did not introduce evidence of the currency or argue its conversion into a drug equivalent. Thus, if the agreement existed, it was not breached, and if it was not breached, Torres received the benefit of his bargain and fails

---

[4] The sentencing transcript indicates that, in fact, the District Judge did not rely upon an exact conversion of the currency into its drug equivalent for determining Torres's base offense level under the guidelines. Instead, the Court considered the currency as probative evidence of Torres's key role as a supplier in the drug trafficking conspiracy. Coupling that evidence with Ms. Robbins's testimony and discounting the inconsistencies in her statements, the Court concluded that the Government proved by a preponderance of the evidence that Torres was responsible for at least 1 kilogram of crack, significantly less than the 1.5 to 4.5 kilograms contended by the Government and the 6 kilograms alleged by Ms. Robbins. (ECF No. 108-2 at 54). This finding was also consistent with the relevant conduct attributed to Ms. Robbins, a self-professed co-conspirator of Torres, who was found responsible for 500 to 1,500 grams of crack. (ECF No. 108-2 at 28).

[5] The oral agreement described by Torres clearly did not fall within Fed. R. Crim. P. 11(c)(1)(A) or 11(c)(1)(C) and could not have been construed as binding on the Court, as is clear from the multiple provisions in the plea agreement indicating that sentencing was within the sole discretion of the Court. Therefore, the District Court was not obligated to follow the mandates of Fed. R. Crim P. 11(c)(5) in the event that it deviated from the agreement at sentencing. *See United States v. Lewis,* 633 F.3d 262, 270 (4th Cir. 2011).

to establish the first prong of *Strickland.* Assuming the oral agreement never existed but counsel told Torres that it did, Torres still cannot demonstrate the prejudice prong of *Strickland*, because the Government did not use a conversion of currency for arguing Torres's relevant conduct, and the District Court did not rely on a Government-propounded conversion of the currency into its drug equivalent for the purpose of determining Torres's base offense level.

To the extent that Torres is suggesting that counsel misled him regarding the determinative effect of the alleged oral agreement with the Government, or that he was duped into believing the agreement capped the drug weight for sentencing purposes, the undersigned finds these suggestions to be palpably incredible and patently frivolous. The unequivocal terms of the plea agreement, the Rule 11 colloquy, Torres's statements, the contents of the sentencing memoranda filed by the parties, the objections to the presentence report filed by Torres, and the arguments of counsel overwhelmingly establish that the weight of drug attributable to Torres for sentencing purposes was hotly contested from the outset and was not an issue that was compromised by oral promise or written agreement and stipulation.

Federal Rule of Criminal Procedure 11 governs the validity of guilty pleas. The purpose of the Rule 11 colloquy is to ensure that the plea of guilty is entered into knowingly and voluntarily. *See United States v. Vonn,* 535 U.S. 55, 58, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002); *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed2d 747 (1970). When accepting a guilty plea, the court must address the defendant personally in open court and inform him of the rights that he is waiving by changing his plea to guilty. Fed.R.Crim.P. 11(b). The court also must determine whether there is a factual basis for the plea and ensure that the plea did not result from force, threats, or

non-plea agreement promises. *Id.; see also United States v. DeFusco,* 949 F.2d 114, 119–20 (4th Cir. 1991). If the defendant fails to understand his constitutional protections and the charges made against him, the guilty plea is invalid and should not be accepted. *Henderson v. Morgan,* 426 U.S. 637, 645, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). "The purpose of Rule 11 is not only to detect and reject involuntary and unknowing guilty pleas but also to produce a suitable record of the plea and plea agreement." *United States v. Friedland*, 879 F.Supp. 420, 427 (D. N. J. 1995). Because the Rule 11 hearing provides the best evidence of a criminal defendant's understanding and acceptance of the plea and its consequences, when assessing the voluntary and intelligent nature of a guilty plea on a § 2255 motion, the reviewing Court necessarily allocates substantial weight to the Rule 11 colloquy.

Statements made during a hearing to accept a guilty plea are presumed to be true and subsequent attacks that contradict these statements may generally be dismissed as frivolous. *U.S. v. Lemaster,* 403 F.3d 216 (4th Cir. 2005). The Fourth Circuit Court of Appeals explained that:

> a defendant's solemn declarations in open court ... 'carry a strong presumption of verity ... because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy ... Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.

*Lemaster,* 403 F.3d at 221–22. As in *White,* situations can occur, albeit rarely, in which the written plea agreement and the defendant's sworn statements at the plea hearing do not foreclose the possibility of an involuntary guilty plea. However, this is not such a case. The record overwhelmingly supports the conclusion that Torres knew full well that

the issue of relevant conduct at sentencing was not resolved by the plea agreement, the stipulation, or any oral understanding with the Government.

In this case, the written plea agreement explicitly notified Torres that the stipulation of facts could be rejected by the Court, and if it was, Torres had no right to withdraw his plea. (ECF No. 62 at 4-5). The plea agreement also clearly stated that the "matter of sentencing is within the sole discretion of the Court" and the Government "has made no representations or promises as to a specific sentence." The agreement further indicated that "[n]othing contained in this agreement restricts the use of information obtained by the United States from an independent, legitimate source, separate and apart from any information and testimony provided pursuant to this agreement, in determining the applicable guideline range." (*Id.* at 3). The Government expressly reserved its rights at sentencing to "inform the Probation Office and the Court of *all relevant facts and conduct* ... present evidence and argument relevant to the factors enumerated in 18 U.S.C. § 3553(a) ... respond to statements made to the Court by or on behalf of Mr. Torres ... address the Court regarding the issue of Mr. Torres's acceptance of responsibility." (ECF No. 62 at 5) (emphasis added). Therefore, the written agreement plainly contravenes Torres's allegations and substantiate that he knew before entering a guilty plea that the amount of drug attributable to him could vary from the amount to which he stipulated and pled. Moreover, Torres signed an acknowledgement at the end of the agreement verifying that he had read and carefully discussed every part of the written agreement with his counsel; that his attorney had advised him regarding the sentencing guidelines; and that no inducements or promises had been made other than those contained in the agreement. (*Id.* at 6).

At the plea hearing, Torres's counsel reviewed the terms of the plea agreement for the Court. He indicated that Torres's potential sentence included imprisonment for a period of not less than five years and not more than forty years. (ECF No. 108-3 at 7). He referenced the stipulation of facts, noting that Torres and the Government understood that the Court was **not** bound by the stipulation and that Torres could not withdraw from the guilty plea even if the Court rejected some or all of the stipulated facts. He confirmed that Torres agreed to waive his right to appeal his sentence as long as it fell within the sentencing guidelines range determined by the District Court. Counsel substantiated Torres's understanding that the Court had sole discretion to determine a sentence, that the Government had made no representations or promises as to a specific sentence, and that the Government reserved its right to share all relevant information with the Court at sentencing. (*Id.* at 8-10).

Before accepting Torres's plea, the Court thoroughly advised Torres of the rights he would forfeit by entering a guilty plea and reviewed the sentencing process. (ECF No. 108-3 at 29). The Court effectively disabused Torres of any understanding that his base offense level was predetermined by an agreement between the parties or the stipulation of facts, explaining that the applicable guideline range could not be calculated until the presentence report was completed. The Court cautioned Torres that the ultimate sentence could be different from any estimate supplied by Torres's counsel and could exceed the applicable guidelines range. The Court further reminded Torres that once he entered a guilty plea, he could not withdraw his plea even if he was unhappy with the sentence imposed. Torres again acknowledged his understanding of these circumstances, confirmed that no one had promised him anything or told him something different than what had been reviewed during the hearing, and affirmed his

desire to enter a guilty plea. At the end of the hearing, the Court asked the Government its position concerning "the amount of drugs or any other relevant or offense conduct" and instructed the Government to provide a chart or narrative explanation of the "relevant conduct or offense conduct that [it] would attribute to the defendant for sentencing purposes;" once again, alerting Torres to the fact that the amount of drugs stipulated in the plea agreement was not determinative of the drug amount that could be attributed to him at sentencing. Torres's *post hoc* claim that he believed he could only be held accountable for the 5 grams of crack that he admittedly possessed to distribute so completely contradicts the express terms of the plea agreement and the Rule 11 colloquy that it is patently implausible.

Other evidence in the record supports the conclusion that from the outset of plea negotiations Torres fully comprehended the potential impact of relevant conduct (i.e. drug weight) on his sentence range. First, the careful wording of the stipulation and Torres's selective statements at the plea hearing substantiate his knowledge that any currency connected with his drug trafficking activities could be converted into equivalent drug weight for relevant conduct. Moreover, in their sentencing memoranda, the parties clearly indicate that the issue of drug weight was a ongoing matter of significant dispute. (ECF Nos. 71, 72-2). The Government relied heavily upon the grand jury testimony of Donta Brooks and the written admission of Tracy Robbins that she was responsible for 500 to 1,500 grams of crack in her role as a co-conspirator of Torres. In his memorandum, Torres attacked the credibility and character of Brooks and Robbins, denying that he was part of a conspiracy and claiming that their allegations were ludicrous. Prior to completion of the presentence report, Torres's counsel filed a motion for the issuance of Rule 17(a) subpoenas on behalf of Torres. (ECF No. 67). In

the motion, counsel asked that certain individuals be subpoenaed to the sentencing hearing to refute the anticipated testimony of the Government's witnesses on the weight of drug attributable to Torres. Even before hearing their testimony, Torres argued that their statements should not be considered on the issue of relevant conduct. Thus, Torres knew that the matter of relevant conduct—specifically, the amount of drugs that could be attributed to him at sentencing—was an unresolved sentencing issue.

On June 4, 2010, the Government filed its objections to the presentence report. Generally, the Government explained that the prior statements of Donta Brooks and Tracy Robbins supported the Government's position that Torres was responsible for 2-7.56 kilograms of crack, which corresponded to a base offense level of 36 under the sentencing guidelines. Ten days later, Torres filed his objections, arguing that Brooks and Robbins were unreliable and asserting that Torres should be held responsible only for the distribution amount of crack to which he had admitted in the stipulation of facts. Torres also argued that Robbins was found responsible for 500 to 15oo grams of cocaine base; accordingly, the Government was unfairly trying to attribute more drug weight to Torres than Robbins for the same conspiracy. At sentencing, Torres offered witnesses to refute Robbins's testimony and made all of the same arguments regarding limiting the drug weight to the stipulated amount. Nothing in the record corroborates Torres's claim that he entered the guilty plea believing that the drug weight attributable to him was capped at 5 or even 19.6 grams by the stipulation or the alleged oral agreement of the Government.

Contrary to Torres's assertions, the record confirms that (1) his guilty plea was voluntary and intelligent and (2) the District Court fully complied with Federal Rule of Criminal Procedure 11 in accepting Torres's plea. The District Court

conducted a thorough Rule 11 colloquy, establishing that Torres was competent and understood the consequences of his plea prior to allowing Torres to enter a guilty plea. (ECF No. 108-3). The Court offered Torres and his counsel multiple opportunities to seek clarification or withdraw from the hearing, yet when asked, Torres affirmed his desire to go forward with his guilty plea.

In addition, the record demonstrates that Torres was not prejudiced by the alleged inactions of his trial and appellate counsel related to calculation of the sentence range. For the reasons previously stated, trial counsel had no basis upon which to complain about the Government's presentation at sentencing. Moreover, to establish prejudice, Torres must show a reasonable probability that his sentence would have been more lenient if not for his counsel's ineffectiveness. The transcript of the sentencing hearing reflects defense counsel's Herculean efforts to convince the District Court that Torres was merely a small time crack user falsely accused of conspiracy by two unreliable drug dealers who hoped to get favorable treatment for assisting the Government. Unfortunately for Torres, the District Court simply did not buy the pitch. Noting the physical evidence corroborating the witness testimony that Torres was a major supplier of crack in the area and the substantial amount of crack allegedly seen in Torres's possession over the years, even when discounting the reliability of the testimony to some degree, the District Court found by a preponderance of the evidence that Torres was responsible for a least one kilogram of crack. This determination was not based on wholesale acceptance of the Government's position or of the presentence report and did not rely on an exact conversion of cash into drug weight; rather, it was reached after consideration of the evidence as a whole. Fourth Circuit law is clear that "[s]o long as the district court sentences a defendant *within the statutory* maximum

authorized by the jury findings or guilty plea, the court can consider facts that it finds by a preponderance of the evidence to exercise its discretion in determining the appropriate sentence within the maximum." *United States v. Taylor,* 368 Fed. Appx 350, 356 (4th Cir. 2010) (unpublished) (case citations omitted). This evidence may include information relating to uncharged conduct or "even acquitted criminal conduct when the facts of that conduct are found by a preponderance of the evidence." *Id.*; *See also United States v. Grubbs,* 585 F.3d 793, 799 (4th Cir. 2009). Torres was sentenced well within the statutory maximum even as it existed after the reductions of the Fair Sentencing Act of 2010. Accordingly, there is no reasonable basis upon which to conclude that Torres's sentence would have been more lenient if the currency had been entirely excluded from the analysis.

Similarly, Torres's criticism that appellate counsel failed to raise the lack of a factual basis to support the District Court's conversion of the currency into its drug equivalent fails under the second prong of the *Strickland* test. Regardless of whether counsel raised the issue of the Court's factual foundation for a currency to drug conversion, the Fourth Circuit specifically examined the District Court's determination of drug weight and the reasonableness of Torres's sentence. (ECF No. 95). Emphasizing the right of the District Court to convert currency into drug weight and to rely on direct or hearsay testimony of lay witnesses as evidence of drug quantity, the Fourth Circuit held that the District Court did not clearly err in attributing one kilogram of crack to Torres. This decision effectively eliminates any reasonable probability that Torres would have prevailed on his appeal had appellate counsel specifically addressed the propriety of a cash conversion to its drug equivalent.

Consequently, the undersigned **FINDS** that the first and second grounds of Torres's § 2255 motion are without merit and further **FINDS** that Torres's guilty plea was voluntary and intelligent.

### B.   Challenge Related to the Fair Sentencing Act of 2010

Torres next asserts that his trial counsel erred by not requesting a short continuance of the sentencing hearing to allow President Obama time to sign into law the Fair Sentencing Act of 2010. Torres argues that the United States Senate had already passed the law, and it was expected to pass the House of Representatives and be signed into law within a few weeks after his scheduled sentencing hearing. The Act effectively eliminated the mandatory minimum sentence for crimes involving less than 28 grams of cocaine base, thus Torres contends that his "guideline range would have been 0-20 years and with no mandatory minimum sentence," making it reasonably probable that he would have received a shorter term of imprisonment. (ECF No. 114 at 5).

In order to succeed on the first prong of his ineffective assistance of counsel claim, Torres must establish that Mr. Helgoe's failure to anticipate a development in the law and request a continuance fell outside the wide range of objectively reasonable professional assistance. Torres simply cannot meet that burden. It is well-settled that an attorney cannot be held accountable for failing to anticipate a change in the law. *United States v. McNamara,* 74 F.3d 514, 516-17 (4th Cir. 1996) (citing *Kornahrens v. Evatt,* 66 F.3d. 1350, 1360 (4th Cir. 1995); *See also United States v. Jeanpiere*, 2012 WL 4898182 *2 (D.Minn. Oct. 16, 2012) (collecting cases). Torres is equally hard put to establish prejudice, having confused statutorily-imposed mandatory sentences with offense level ranges set by the sentencing guidelines. The record is unequivocal that the District Court did not base Torres's term of imprisonment on the existence of a statutory

mandatory minimum sentence. Instead, the Court calculated the sentence range using the advisory sentencing guidelines. The minimum term of imprisonment called for by the applicable offense level under the guidelines was 121 months, which substantially exceeded the statutory mandatory minimum sentence.[6] Consequently, the mandatory minimum sentence became irrelevant to the analysis. Given that the statutory mandatory minimum sentence played no role in the term of imprisonment actually received by Torres, he was not prejudiced by the failure of his counsel to delay the sentencing hearing.

### C.      Challenges Related to Illegal Search and Arrest

Finally, in his last two grounds, Torres resurrects his pre-plea motion to suppress, arguing that the District Court erred when it found the November 17 search to be moot. In Torres's view, the Court's failure to suppress the evidence of the currency paved the way for the Government to use it against him at sentencing. In light of Torres's knowing and voluntary guilty plea, the undersigned finds this allegation to be frivolous. As stated *supra*, a voluntary and intelligent guilty plea constitutes a waiver of all claims relating to non-jurisdictional errors that occurred prior to the plea, including claims relating to alleged constitutional deprivations. *U.S. v. Partlow*, 301 Fed.Appx. 297 (4th Cir. 2008) (citing *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)); *See also United States v. McCleary,* 112 F.3d 511, 1997 WL 215525 (4th Cir. 1997) (unpublished). In addition, during the Rule 11 colloquy, the District Court explicitly reminded Torres that by entering his guilty plea, he was waiving his right to pursue the motion to suppress. (ECF No. 108-3 at 26-27). Torres acknowledged

---

[6] The District Court considered the inequity in sentences given for crack cocaine versus those given for powder cocaine and observed that even when treating the crack cocaine as powder cocaine in this case, the offense level under the sentencing guidelines was the same. (ECF No. 108-2 at 55).

his understanding and proceeded to enter a knowing and intelligent guilty plea. Therefore, the undersigned **FINDS** that Torres is precluded from raising the motion to suppress in this collateral attack.

The undersigned further notes that Torres did not raise these issues on appeal. A § 2255 motion does not supplant or obviate the need to file a direct appeal. The failure to raise a claim on direct appeal may result in a procedural default, barring that claim for purposes of collateral attack. A constitutional error that could have been, but was not raised on appeal may not be raised for the first time in a § 2255 motion, unless the movant can show either (1) "cause" that excuses the failure to raise the error on appeal and "actual prejudice" resulting from the error, or (2) that a miscarriage of justice would occur if the court refuses to entertain the collateral attack. *Massaro v. United States*, 538 U.S. 500, 504 (2003) (citing *Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *United States v. Frady*, 456 U.S. 152, 167–68 (1982)); *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999). To establish "actual prejudice," the movant must show that the alleged error resulted in an "actual and substantial disadvantage," rather than a mere possibility of prejudice. *Satcher v. Pruett*, 126 F.3d 561, 572 (4th Cir. 1997) (quoting *Murray v. Carrier*, 477 U.S. 478, 494 (1986)). To demonstrate a miscarriage of justice, the movant must prove "actual innocence" of the crime for which he was convicted, substantiating that "it is more likely than not, in light of all the evidence, that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 621. Torres makes neither of these showings. Accordingly, the undersigned **FINDS** that these grounds have been procedurally defaulted.

Finally, in the plea agreement, Torres waived his right to challenge his guilty plea, conviction, and sentence in a collateral attack for any reason other than ineffective

assistance of counsel. At the plea hearing, the District Court reviewed the waiver provision and explained that such waivers were generally enforceable. Torres acknowledged his understanding of the effect of the waiver and of its enforceability. (ECF No. 108-3 at 30-31). He never challenged the validity of the waiver on appeal. In the face of Torres's testimony at the plea hearing, the terms of the written agreement, and the lack of a demonstrable breach of the agreement by the Government, the undersigned **FINDS** that Torres knowingly and voluntarily waived his right to attack his plea, conviction, and sentence on these grounds. *See United States v. Lemaster,* 403 F.3d 216, 220 (4th Cir. 2005) ("[A] criminal defendant may waive his right to attack his conviction and sentence collaterally so long as the waiver is knowing and voluntary").

## V.     <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** the following:

**1.**     Movant's Motion to Amend § 2255 Petition (ECF No. 112) be **GRANTED;**

**2.**     Movant's Application Under 28 U.S.C. § 2255 for Writ of Habeas Corpus by a Person in State or Federal Custody, as amended, (ECF No. 102) be **DENIED**;

**3.**     The United States' Motion to Dismiss Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 108) be **GRANTED**; and

**4.**     This civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

Movant is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section

636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Movant shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Movant, Respondent, and any counsel of record.

**FILED**:  November 16, 2012.

Cheryl A. Eifert
United States Magistrate Judge